IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

vs.

MICHAEL ANTHONY ERVIN,

Defendant/Movant.

Cause No. CR 13-23-BLG-SPW
CV 16-56-BLG-SPW

ORDER GRANTING § 2255
MOTION AND SETTING
EXPEDITED RE-SENTENCING
HEARING

This case comes before the Court on Defendant/Movant Ervin's motion to

vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He seeks relief

under *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015)[1], and

*Strickland v. Washington*, 466 U.S. 668 (1984). The United States opposes Ervin's

motion.

## I. Background

Ervin was charged on March 25, 2013, with one count of distributing

hydrocodone, at that time a Schedule III controlled substance, in violation of 21

U.S.C. § 841(a)(1) (Count 1), and one count of distributing morphine, a Schedule

---

[1] Another U.S. Supreme Court decision called *Johnson v. United States*, 559 U.S.
133 (2010), is also relevant and discussed here at length. The two cases are not
related, but for the sake of brevity, the Court will refer to the 2010 decision as
*Johnson I* and the 2015 decision as *Johnson II*.

II controlled substance, also in violation of 21 U.S.C. § 841(a)(1) (Count 2). He reached a plea agreement with the United States and pled guilty to the hydrocodone count, Count 1. *See* Indictment (Doc. 1) at 2; Plea Agreement (Doc. 24) at 3 ¶ 4; Minutes (Doc. 28); Judgment (Doc. 36) at 1. On September 10, 2013, he was sentenced to serve 148 months in prison. Judgment (Doc. 36) at 2.

In 2014, Ervin filed a timely motion under 28 U.S.C. § 2255. This court granted the motion on April 2, 2015, and vacated the original judgment. On July 10, 2015, following a sentencing hearing, this Court sentenced Ervin to 60 months in prison, and two years of supervised release. Am. Judgment (Doc. 68) at 2-3; Statement of Reasons (Doc. 69) at 1 ¶ III. Ervin did not appeal.

On May 12, 2016, Ervin, represented by new counsel, filed the instant motion under 28 U.S.C. § 2255. In it, Ervin alleges that his sentence is unlawful because his underlying conviction out of Michigan does not qualify as a "crime of violence" under *Johnson II*, so he is not a career offender under the Sentencing Guidelines, *see* Mot. § 2255 (Doc. 72) at 9-10. To that end, Ervin also alleges that his counsel at the re-sentencing hearing was ineffective by failing to realize that, under *Johnson II*, Ervin's Michigan conviction was no longer a crime of violence and failing to object to Ervin's designation as a career offender. *Id.* at 10.

2

## II. Direct vs. Collateral Review

As a threshold matter, the United States argues that *Johnson II* does not apply "retroactively" to cases challenging guidelines sentences on collateral review. *See* Resp. to § 2255 Mot. (Doc. 77) at 7-14. While the Court agrees with this general proposition, Ervin's situation is distinguishable.

Because *Johnson II* overruled recent precedents, it is a "new rule" that makes a clear break with prior law. *See Welch v. United States*, __ U.S. __, 136 S. Ct. 1257, 1264 (2016). The general rule is that new constitutional rules of criminal procedure do not apply retroactively. *See Teague v. Lane*, 489 U.S. 288, 310 (1989) ("new constitutional rules of criminal procedure will *not* be applicable to those cases which have become final *before* the new rules are announced.") (Emphases added). An exception to the general rule exists, however, with respect to any case that is pending on direct review or not yet final. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.").

Here, Ervin's case was not final when *Johnson II* was decided. This Court vacated his original judgment on April 2, 2015. *Johnson II* was issued on June 26, 2015. Ervin's amended judgment was not entered until July 13, 2015. Ervin's

conviction became final on July 27, 2015, when his time to appeal the amended judgment expired. *See* Fed. R. App. P. 4(b)(1)(A)(i); *Griffith*, 479 U.S. at 321 n.6. According to *Griffith*, the date a conviction becomes final determines what law applies to a § 2255 motion. Because Ervin's conviction was not yet final when *Johnson II* was issued, Ervin is not asking the Court to apply a "new" rule. He is in no different position than any other defendant sentenced after *Johnson II* was issued, so *Johnson II* applies in Ervin's case.

### III. Issues Presented by the Parties

First, Ervin claims that his conviction under Michigan law for attempted unarmed robbery does not qualify as a "crime of violence" under any part of the definition in U.S.S.G. § 4B1.2(a). Mot. § 2255 (Doc. 72) at 13-42. In response, the United States argues that it qualifies as a "crime of violence" under the "elements clause," U.S.S.G. § 4B1.2(a)(1). Resp. to § 2255 Mot. (Doc. 77) at 15-24.

Second, Ervin also claims that counsel was ineffective for failing to challenge Ervin's career offender designation under *Johnson II* since his Michigan conviction did not qualify as a crime of violence. Mot. § 2255 at 42-47; *see also* Reply (Doc. 81) at 14-15. The United States argues that counsel's performance was not deficient because competent counsel could not be expected to foresee that *Johnson II* would apply to the sentencing guidelines. Resp. to § 2255 Mot. at 24-

4

In the Order requiring the United States to answer Ervin's motion, the Court required the United States to "respond to the allegations on the merits and . . . raise and brief any and all defenses the United States wishes the Court to consider." Order (Doc. 73) at 4-5 ¶ 2. The Court will decide only the two issues the parties have presented evidence on: whether it was unreasonable for counsel to fail to foresee that *Johnson II* would apply to the guidelines and, if so, whether Ervin is a career offender. The Court will not consider the possibility that counsel *did* foresee that *Johnson II* would apply to the guidelines but decided that Ervin would be a career offender under the elements clause. The United States did not indicate that discovery or an evidentiary hearing would be required to determine why counsel conducted the defense as he did and thus failed to preserve the argument.

## IV. Analysis

Simply because *Johnson II* applies to Ervin's § 2255 motion does not necessarily mean he is entitled to relief. Because Ervin could have, but failed to, object to a *Johnson II* error at sentencing and did not appeal, his claim for relief under the rule of that case is procedurally defaulted. *Bousley v. United* States, 523 U.S. 614, 621 (1998). The claim may addressed on its merits only if Ervin excused his default. *See, e.g.*, *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

Where it exists, ineffective assistance of counsel serves as cause to excuse

procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Additionally, ineffective assistance is a freestanding claim for relief. *Strickland v. Washington*, 466 U.S. 668 (1984).

Consequently, the Court must first consider Ervin's ineffective assistance claim. Ervin must show that counsel's performance fell below an objective standard of reasonableness, *Strickland*, 466 U.S. at 687-88, and that, if counsel had challenged the career offender enhancement, there was a reasonable probability of a different outcome. *Id.* at 694. Only if Ervin's ineffective assistance claim succeeds may the Court consider whether Ervin is or is not a career offender.

## A. The *Strickland* Claim

### 1. Counsel's Performance

The United States asserts that counsel acted reasonably in failing to challenge Ervin's career offender designation under *Johnson II* because *Johnson II* addressed the Armed Career Criminal Act ("ACCA"), not the sentencing guidelines. As of Ervin's sentencing date, no published federal case had yet held that *Johnson II* applied to the guidelines. Resp. to § 2255 Mot. at 24-27.

### a. Legal Standard

In every case, *Strickland* requires that counsel identify the objectives most important to the defendant's case and do the research necessary to decide whether and how to pursue those objectives. *See, e.g., United States v. Beltran-Moreno*,

556 F.3d 913, 918 (9th Cir. 2009); *see also Strickland,* 466 U.S. 690-91. While it would have required a crystal ball to foresee all the implications or potential applications of *Johnson II* the day it was issued, the nature of the case required every criminal defense lawyer who had a client subject to the career offender designation to consider its impact on that designation. As *Strickland* says, there is a "wide range of reasonable professional assistance." 466 U.S. at 689. Defense counsel cannot be ineffective for failing to foresee the holding of *Johnson II* at a sentencing hearing in November 2014, six months before *Johnson II* was issued. Conversely, defense counsel would be ineffective by failing to recognize that the residual clause of the ACCA was invalid after *Johnson II* was issued on June 26, 2015. These are opposite ends of a spectrum. Throughout that spectrum, however, it would be ineffective to fail to research the law relevant to an enhancement that results in a significant increase in the client's sentencing range.

Accordingly, the Court finds that a hearing is unnecessary to determine whether counsel made a reasonable strategic decision that a challenge to the career offender provision was unlikely to succeed. There is no reasonable explanation for counsel's failure to research and object to the enhancement.

### b. The Enhancement

It is common (and reasonable) for criminal defense counsel to make the considered decision to pursue a strategy that, although inconsistent with

7

challenging one particular enhancement, would, if successful, yield comparable results with respect another enhancement or downward adjustment. For instance, a lawyer representing a defendant who waived his right to appeal the sentence and whose three-level downward adjustment for acceptance of responsibility was in jeopardy might make a reasonable strategic decision to focus exclusively on the acceptance of responsibility issue rather than the career-offender enhancement if that enhancement only resulted in a one-level increase in the offense level. Here, however, with the career offender enhancement, Ervin's offense level went from 6 to 24. The draft presentence report included a three-point adjustment for acceptance of responsibility. His total adjusted offense level was 21. Ervin's criminal history category was VI (with or without the enhancement). His advisory sentencing range was 77 to 96 months.

Without the career offender enhancement, Ervin's base offense level was 6. He would have received a two-point adjustment for acceptance of responsibility. The resulting total adjusted offense level would have been 4. With a criminal history category of VI, the advisory sentencing range would have been 6 to 12 months, and Ervin would have been eligible for probation with intermittent or community confinement or home detention. U.S.S.G. ch. 5 Part A; *id.* § 5B1.1(a)(2).

An *18-level* upward adjustment is significant, even by career-offender

enhancement standards. No other strategy was likely to yield a result remotely comparable to that of removing the career offender designation. Ervin's counsel did not pursue some other strategy inconsistent with challenging the career offender designation; nor did any other strategy exist which would have provided an incentive not to object to the career offender designation. Ervin waived appeal if the United States filed a motion under U.S.S.G. § 5K1.1, but that is no reason not to object to the guideline calculation. And notably, Ervin waived his right to appeal the sentence *unless* he objected to the guideline calculation. *See generally* Plea Agreement (Doc. 24) at 8-10 ¶ 8(a)-(c). In summary, there was ample reason for counsel to "research the record and the relevant case law," *Beltran-Moreno*, 556 F.3d at 918, and object to the career offender enhancement, and make the best argument he could against it.

Under the circumstances of this case, any reasonable defense attorney would have tried to challenge the career offender designation. Therefore, there is no need to determine whether counsel in this case actually considered doing so and decided against it.

### c. Application of ACCA Decisions to Guidelines

The United States contends that the question of whether *Johnson II* would apply to the guidelines was so novel that counsel could not be expected to foresee it. Resp. to § 2255 Mot. (Doc. 77) at 25-27. If *Johnson II* were the first case

9

interpreting language in the ACCA that mirrors language in a sentencing guideline, its application to the guidelines would be fairly described as novel. But the legal landscape was not as unsettled as the United States suggests.

In a voluminous body of case law, beginning in 1990 and continuing through the date of Ervin's re-sentencing and today, the Ninth Circuit has consistently applied the Supreme Court's ACCA decisions, as well as its decisions under the Immigration and Nationality Act ("INA"), to interpret identically or similarly phrased sentencing guidelines. So far as the Court can tell, it has done so without exception and without any serious question.

More specifically, *Johnson II* was decided under the residual clause of the ACCA. The opinion in *Johnson II* pointedly referred to the Court's four previous attempts to define the scope of the ACCA's residual clause. *See Johnson II*, 135 S. Ct. at 2556, 2558-59. Before *Johnson II*, the Ninth Circuit had applied each of those four decisions to the residual clause of the career offender guideline— sometimes with notable speed. *See, e.g.*, *United States v. Park*, 649 F.3d 1175, 1177-78 (9th Cir. June 17, 2011) (applying *Sykes v. United States*, 564 U.S. 1 (U.S. June 9, 2011), and *United States v. Begay*, 553 U.S. 137 (2008)); *United States v. Alderman*, 601 F.3d 949, 953 (9th Cir. 2010) (applying *United States v. Chambers*, 555 U.S. 122 (2009)); *United States v. Carson*, 486 F.3d 618, 619-20 (9th Cir. May 15, 2007) (applying *James v. United States*, 550 U.S. 192 (U.S. April 18, 2007)).

10

The Ninth Circuit also applied decisions under other provisions of the

ACCA or INA to the residual or other clauses of the career offender provision. *See*

*United States v. Simmons*, 782 F.3d 510, 513-14 (9th Cir. 2015) (applying

*Descamps*, __ U.S. __, 133 S. Ct. 2276 (2013), to residual clause of career offender

provision); *United States v. Villavicencio-Burruel*, 608 F.3d 556, 561 (9th Cir.

2010) (applying *Johnson I*, 559 U.S. 133 (2010), to elements clause of career

offender provision); *United States v. McDougherty*, 920 F.2d 569, 572-74 (9th Cir.

1990) (applying *Taylor v. United States*, 495 U.S. 575 (1990), the original

categorical-analysis case, to the offenses listed in Application Note 1 of the career

offender provision of the guidelines).

Further, the Ninth Circuit parted company from some other circuits early on

in the guidelines regime by holding the guidelines subject to vagueness challenges

under the Due Process Clause of the Fifth Amendment—unfortunately in a case

called *United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997)

(acknowledging circuit split represented by *United States v. Wivell*, 893 F.2d 156,

159-60 (8th Cir. 1990)); *see also, e.g.*, *United States v. Spencer*, 724 F.3d 1133,

1145-46 (9th Cir. 2013); *United States v. Rearden*, 349 F.3d 608, 614-15 (9th Cir.

2003); *United States v. Gallagher*, 99 F.3d 329, 334 (9th Cir. 1996).

Thus, when *Johnson II* was issued, it was reasonable, at least in the Ninth

Circuit, to presume it would apply to the career offender provision of the

11

guidelines. A reasonable lawyer whose client faced an 18-level career offender enhancement and who researched the issue should have considered the possibility that *Johnson II* would apply to invalidate the residual clause of the career offender guideline. Controlling Ninth Circuit precedents available to counsel at the time provided no reason for a criminal defense lawyer to conclude *Johnson II* would clearly not apply to a guidelines case.

"Unsettled" is not a fair description of the legal landscape following issuance of *Johnson II*. Although the United States appropriately acknowledges that it borrowed a portion of its brief from a district court's opinion, *see* Resp. to § 2255 Mot. at 25 n.4 (citing *United States v. Kilbride*, No. CR 05-870-PHX-DGC, 2012 WL 2504006 at *6 (D. Ariz. June 28, 2012)), its citation to *Kilbride* is somewhat misleading. The Ninth Circuit has not noted, expressly or otherwise, that the relevant law on application of the Supreme Court's ACCA decisions to identical provisions in the sentencing guidelines is "highly unsettled." Nor is it.

In *Kilbride*, the defendant claimed, on direct appeal, that the trial jury should have been instructed to apply a standard that did not exist until appellate counsel persuaded the court to adopt it. Even though appellate counsel's argument on the standard was adopted, the defendant did not benefit, because trial counsel had not requested an instruction on the standard, and the appellate court said trial counsel's error in not requesting the instruction was "far from plain." Because the defendant

did not benefit from appellate counsel's sterling performance, he accused trial counsel of ineffective assistance; but a lawyer cannot be ineffective for failing to break new ground. *Kilbride*, therefore, is an example of the wide range of reasonable professional assistance.

Since the residual clause was invalidated by *Johnson II*, that point was, at the time of Ervin's re-sentencing, as decisively settled as a point of law can be. And Ninth Circuit precedent should have been a red flag that the decision would be extended to guidelines cases. Accordingly, when *Johnson II* was issued, it was unreasonable for a criminal defense lawyer confronting an 18-level career offender enhancement under the residual clause to conclude that the decision was so unlikely to apply to the guidelines that no objection was necessary.

### 2. Prejudice

The next question is whether there is a reasonable probability that Ervin's sentencing would have been different if counsel had objected to the career offender enhancement on the grounds that *Johnson II* invalidated the residual clause. A reasonable probability is less than a preponderance of the evidence. *See Strickland*, 466 U.S. at 694.

Because Ninth Circuit law in existence when *Johnson II* was issued amply supported the decision's application to the residual clause of the career offender guideline, there is, at the least, a reasonable probability the Court would have

13

found Ervin's conviction for attempted unarmed robbery under Michigan law not a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(B). Even if the Court had come to believe that a reasonable sentence under 18 U.S.C. § 3553(a) must be greater than indicated by an offense level of 4 and a criminal history category of VI, there is still a reasonable probability the sentence would not have been 60 months.

Whether Ervin would have been a career offender under any other provision of the guideline is addressed below in Part B.

### 3. Conclusion: *Strickland* Test

Ervin is entitled to relief under *Strickland*. It was unreasonable for counsel to miss either *Johnson II*, or the substantial legal support in the Ninth Circuit for applying that decision to Ervin's case. Because Erwin is entitled to relief under *Strickland*, his procedural default of the *Johnson II* claim is excused. Also, because he may be entitled to immediate release from incarceration, the Court will next consider the parties' arguments as to whether he is or is not a career offender.

## B. Is Ervin a Career Offender?

### 1. "Crime of Violence"

Under the federal sentencing guidelines, a person is a career offender if he has two or more prior convictions for a controlled substance offense or a "crime of

violence." Ervin's career offender designation rested on two predicate crimes. *See* Presentence Report ¶ 35. One was a controlled substance offense and counted against him under U.S.S.G. § 4B1.2(b). Presentence Report ¶ 46. The United States has not suggested any other conviction in Ervin's history could have supported career offender status. Thus, the question turns on whether Ervin's 1996 conviction in Michigan for attempted unarmed robbery, in violation of Michigan Penal Code § 750.530, was a "crime of violence."

When Ervin was re-sentenced in July 2015, the guidelines defined a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a) (eff. Nov. 1, 2014). In addition, the second paragraph of Application Note 1 provided that "'[c]rime of violence' includes . . . robbery . . . [and] extortion."[2]

---

[2] Effective August 1, 2016, subsection (2) will incorporate into the guideline some of the offenses now set forth in Application Note 1 and eliminate the rest of the second paragraph of the current note. As amended, subsection (2) of U.S.S.G. § 4B1.2(a)(2) will define a "crime of violence" as, in part, a felony that:

> is murder, voluntary manslaughter, kidnapping, aggravated assault, a

The ACCA, 18 U.S.C. § 924(e)(1) and (2)(B), uses the phrase "violent felony" instead of "crime of violence," but the language, structure, and meaning of the two provisions is virtually identical. In both the ACCA and the guideline, the first subsection is commonly called "the elements clause." The second subsection is said to contain "listed" or "enumerated offenses" and a "residual clause." Aside from minor variations, the ACCA's elements clause and residual clause are virtually identical to the elements clause and residual clause of the career offender guideline, although Application Note 1 to the guideline lists several more offenses than the ACCA.

In sum, there are three things to consider in determining whether Ervin's conviction for attempted unarmed robbery is a "crime of violence": the residual clause, the elements clause, and Application Note 1.

### 2. The Residual Clause: *Johnson II*

In *Johnson II*, the Supreme Court held that the ACCA's residual clause is unconstitutionally vague. Both parties agree that "*Johnson* [II] also invalidated the identically-worded residual clause in Section 4B1.2," the career offender provision. Resp. to § 2255 Mot. (Doc. 77) at 8. Because the parties concede this point, the Court concludes that Ervin is not a career offender under the residual

---

forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

16

clause of the career offender guideline.

### 3. The Elements Clause: *Johnson I*

If Ervin's conviction is a crime of violence under the elements clause - that is, if attempted unarmed robbery under Michigan law "has as an element the use, attempted use, or threatened use of physical force against the person of another" - then Ervin was properly designated a career offender.

### a. "Physical Force" in the Federal Guideline

The level of "physical force" necessary to qualify a conviction as a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(i) is "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson I*"). The term connotes an exertion "strong enough to constitute 'power.'" *Id.* at 142. That is more force than is entailed in "*any* intentional physical contact, no matter how slight." *Id.* at 138 (emphasis in original) (internal quotation marks omitted).

To decide whether a defendant's prior conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another," the federal sentencing court must compare the minimum level of force required to support the prior conviction with the minimum level of force required by *Johnson I*. The law of the jurisdiction that entered the prior conviction determines the level of force required to support the conviction. So, for instance, in *Johnson I*, the

17

Supreme Court looked to "the Florida Supreme Court's interpretation of state law" to see how much physical force was required to support a conviction for felony battery under Florida law. Since the Florida Supreme Court held that "the element of 'actually and intentionally touching' under Florida's battery law is satisfied by *any* intentional physical contact, 'no matter how slight,'" *Johnson I*, 559 U.S. at 138 (emphasis in original), the U.S. Supreme Court held that a Florida conviction for felony battery did not meet the threshold of force required by the elements clause of the ACCA, *id.* at 140-42.

The Ninth Circuit Court of Appeals applies the definition of "physical force" in *Johnson I* to define the identical use of the phrase "physical force" in the career offender guideline. *See, e.g.*, *United States v. Flores-Cordero*, 723 F.3d 1085, 1088 (9th Cir. 2013). Since *Johnson I*, the Ninth Circuit has considered several state statutes to determine whether the least conduct captured by them would meet the threshold level of force required by federal law. Of particular relevance here, in *Flores-Cordero*, the court considered whether an Arizona conviction for resisting arrest was a crime of violence under the elements clause of U.S.S.G. § 4B1.2(a). The court acknowledged it had previously considered resisting arrest in Arizona as a "crime of violence" because the Arizona courts had held the offense "required use of force or risk of injury." *Flores-Cordero*, 723 F.3d at 1087 (summarizing *Estrada-Rodriguez v. Mukasey*, 512 F.3d 517, 521 (9th Cir. 2007)).

But, the court said, *Estrada-Rodriguez* "did not deal with the level of force required" to support conviction on the element, and *Johnson I* demanded consideration of the level of force.

So the Ninth Circuit turned to a state case, *State v. Lee*, which assessed whether the prosecution presented sufficient evidence to prove the defendant used "physical force" of the level required by Arizona law. The state court described the defendant's conduct in this way:

> Officer S grabbed Lee's right arm and Officer M grabbed her left arm. Lee jerked her arm away from Officer M, causing Officer M to lose his balance and all three fell to the ground. Once Lee was on the ground she struggled to keep the officers from placing her arms behind her back before they finally handcuffed her. Once handcuffed, Lee kicked her legs, trying to prevent the officers from gaining control of her.

*State v. Lee*, 176 P.3d 712, 713 ¶ 3 (Ariz. Ct. App. 2008). The state court concluded that "Lee's conduct in jerking her arm away from the officers, physically resisting the placement of the handcuffs, and kicking the officers after the handcuffs were placed" met Arizona's statutory element of "using or threatening to use physical force." *Id.* at 715 ¶ 11.

In turn, the Ninth Circuit, in *Flores-Cordero*, held "[w]e must conclude that the conduct involved in *Lee*, which could be characterized as a 'minor scuffle,' did not necessarily involve force capable of inflicting pain or causing injury as contemplated by the Supreme Court's definition of violence in *Johnson* [I]."

19

*Flores-Cordero*, 723 F.3d at 1088. In other words, the amount of force necessary to constitute "physical force" to support a conviction for resisting arrest under Arizona law was less than the amount of force necessary to constitute "physical force" under the elements clause of the career offender guideline. Ergo, resisting arrest under Arizona law could not be a "crime of violence" under the elements clause of the career offender guideline. *Flores-Cordero*, 723 F.3d at 1088.

### b. "Force and Violence" Under Michigan Law

Likewise, if the minimum level of force required to prove attempted unarmed robbery under Michigan law is less than "force capable of causing physical pain or injury to another person," then Ervin's conviction for that crime is not a conviction for a "crime of violence" under the elements clause of the career offender guideline. In 1996, Michigan defined unarmed robbery as follows:

> Any person who shall, by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 15 years.

Mich. Comp. Laws § 750.530 (1991).[3] Thus, the question is whether the presence

---

[3] Ervin was convicted only of attempted unarmed robbery and so was subject to a five-year maximum sentence, not the 15-year maximum applicable to persons who complete the offense of unarmed robbery. The "attempt" element required the State to prove Ervin did some act towards the commission of unarmed robbery but failed or was intercepted or prevented from executing the offense. *See* Mich. Comp. Laws § 750.92 & (2); *see also* Mich. Judgment (Doc. 77-1 at 17).

of the phrase "by force and violence, or by assault or putting in fear" means the Michigan statute "has as an element the use, attempted use, or threatened use of force" of the level required by *Johnson I*.

"The first task for a sentencing court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means." *Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243, 2256 (2016). In essence, the question is whether the statute sets out "elements in the alternative, and thereby define[s] multiple crimes," or whether it "enumerates various factual means of committing a single element." *Id.* at 2249. If the phrase "by force and violence, or by assault or putting in fear" is one element, Ervin's conviction for unarmed robbery meets the elements clause only if *all* means of meeting the element require a use, attempt, or threat to use force of a level sufficient to meet the threshold of *Johnson I*. If the phrase contains two or more elements, however, then the Court may consider which element was proved against Ervin and assess only whether that element meets the threshold of *Johnson I*.

Michigan's unarmed robbery statute prescribes one range of punishment, regardless of whether a particular defendant used "force and violence" or "put[]" someone "in fear," which is a persuasive indication that force and violence, and putting someone in fear, are simply means of meeting one element and not two different elements. *See Mathis*, 136 S. Ct. at 2256 (citing *Apprendi v. New Jersey*,

21

530 U.S. 466, 490 (2000)). Michigan's model jury instruction on robbery supports this interpretation because it does not suggest the jury must unanimously agree on either force and violence, or assault, or putting in fear. *See* Mich. Model Crim. Jury Instr. 18.2. Further, the Michigan Court of Appeals unequivocally found that the statutory language contains means, not elements. *See People v. Walker*, No. 318192, 2015 WL 213228 at *3 (Mich. Ct. App. Jan. 15, 2015) (unpublished) (finding the statute listed alternative means) (citing *People v. Johnson*, 468 N.W.2d 307, 311 (Mich. Ct. App. 1991)). Finally, a "peek at the documents" in Ervin's case, *Rendon v. Holder*, 782 F.3d 466, 473-74 (9th Cir. 2015) (Kozinski, J., dissenting from denial of reh'g en banc), *quoted in Mathis*, 136 S. Ct. at 2256-57, reflects that Ervin committed one crime when he took property "by force and violence, or by assault or putting in fear." The Court finds the Michigan statute lists alternative means of committing a single element of the offense, so that the least conduct captured by all of those means must meet the threshold of *Johnson I*.

Michigan courts decide what Michigan law means by "force and violence, or by assault or putting in fear," and specifically what level of force suffices to meet the element. *See Johnson I*, 559 U.S. at 138. In *People v. Hicks*, 675 N.W.2d 599 (Mich. Ct. App. 2003), the defendant argued he did not use sufficient force to meet the element. The court described the defendant's conduct and its legal meaning as follows:

22

Defendant next argues that the evidence was insufficient to sustain his conviction of unarmed robbery because the prosecution did not present evidence that defendant took the purse "by force and violence, or by assault or putting in fear." We disagree. Viewing the evidence in a light most favorable to the prosecution, the testimony reflects that the victim felt a tug on her purse strap, was pulled backward, reflexively lurched forward, and tried to turn her body to maintain possession of her purse. Additionally, the victim testified that the struggle aggravated her tendonitis. Valerie Jackson also testified that defendant and Branham struggled over the purse. This evidence supports a conclusion that defendant took the purse by force and violence.

*Hicks*, 675 N.W.2d at 608 (internal citations omitted) (citing *People v. Randolph*, 648 N.W.2d 164 (Mich. 2002)). While the victim testified that her tendonitis was aggravated, the Michigan statute does not require a showing of injury. The court found the struggle significant.

Similarly, in *People v. Passage*, 743 N.W.2d 746 (Mich. Ct. App. 2007), the court held that the defendant used "force and violence" sufficient to support his conviction for unarmed robbery "by physically struggling with [store security] personnel and attempting to kick them," because "*any* force against a person . . . is sufficient under the statute." *Id.* at 748-49 (emphasis added). *See also, e.g.*, *People v. Kitchen*, 2015 WL 2437157 (Mich. Ct. App. 2015) (per curiam) (unpublished) (defendant used "force" sufficient for unarmed robbery when he "grabbed [another] by both shoulders, told [him] 'I'm strong too,' and pushed [him]"); *People v. Chandler*, 506 N.W.2d 882, 884 (Mich. Ct. App. 1993) (per curiam) (holding that "force and violence" element of unarmed robbery could

23

"mean any use of physical force against another person so as to harm *or embarrass* him") (quoting Mich. Criminal Jury Instr. 2d 17.14) (emphasis added); *People v. Terry*, 553 N.W.2d 23, 24-25 (Mich. Ct. App. 1993) (per curiam) (considering meaning of "assault" and stating "it is clear that defendant spit on Palus to 'harm or embarrass him,' and, thus, his action constituted violence under the statute."); *People v. Boyd*, 300 N.W.2d 760, 762 (Mich. Ct. App. 1980) (per curiam) ("the throwing of liquid, alleged to be urine, into the face of another person constitutes the use of 'violence', thereby satisfying the requirements of the statute.")), *quoted in Terry*, 553 N.W.2d at 24-25.

*Hicks* and *Passage* involve levels of force similar to the force deployed in *Lee*. They too can be described as cases holding that a "minor scuffle" is sufficient to show "force and violence." But, in *Flores-Cordero*, the Ninth Circuit held that the facts in *Lee* do not rise to the level of "physical force" as the term is defined by *Johnson I*. In other words, the minimum conduct necessary to support a Michigan conviction for unarmed robbery does not rise to the level of "physical force" as defined in *Johnson I*. Unarmed robbery under Michigan law is not a "crime of violence" under the elements clause of the career offender guideline, U.S.S.G. § 4B1.2(a)(1).

### c. The United States' Arguments

The United States relies on *People v. Randolph*, 648 N.W.2d 164, 167
(Mich. 2002), which states that "[b]oth the armed and unarmed robbery statutes are
clear that [a] forceful act must be used to accomplish the taking." *Id.* at 167
(quoting *People v. LeFlore*, 293 N.W.2d 628, 631 (Mich. Ct. App. 1980)); *see also
id.* at 167 n.6 para. 3 ("the taking must be by violence or the threat of violence")
(emphasis omitted). But Michigan law does not define a "forceful act." As the
United States points out, *see* Resp. to § 2255 Mot. at 17, Michigan is largely a
common-law jurisdiction. "The common law held this element of 'force' to be
satisfied by even the slightest offensive touching." *Johnson I*, 559 U.S. at 139
(citing, *inter alia*, 3 W. Blackstone, Commentaries on the Laws of England 120
(1768)). That is not enough to meet the federal standard.

The shortcoming of the United States' brief is that it appeals to common
sense. It says, for instance, "If a robbery is accomplished by 'force and violence,'
then it involves the use of violent force." Resp. to § 2255 Mot. at 21. However, a
federal sentencing court cannot take the words of the state statute at face-value.
The words must be given the meaning that Michigan law gives them.

### d. Out-of-Circuit Decisions

Two federal appellate decisions hold that unarmed robbery under Michigan
law is a "violent felony" under the ACCA. In *United States v. Lamb*, No. 15-2399,

25

638 Fed. Appx. 575 (8th Cir. Apr. 5, 2016) (unpublished), the court did not

consider any Michigan cases discussing the level of force required to support a

conviction for unarmed robbery. The defendant argued only that the "assault or

putting in fear" portion of the Michigan statute did not meet the *Johnson I*

threshold. He did not argue that the "force and violence" means of meeting the

element falls short. *See id.* at 576-77. Thus, the reasoning of the decision does not

affect the meaning of Michigan courts' decisions on the level of force necessary to

support a conviction under the "force and violence" clause.

This leaves *United States v. Tirrell*, 120 F.3d 670, 680 (7th Cir. 1997),

which is frequently cited for the proposition that unarmed robbery under Michigan

law is a violent felony. But *Tirrell* was decided 13 years before the Supreme

Court, in *Johnson I*, defined the quantum of force required to meet the federal

guidelines' elements clause. It is not surprising, therefore, that *Tirrell* treated the

element of "force and violence" in the Michigan statute at face value without

considering what Michigan law had to say about the level of force sufficient to

meet the element.[4]

---

[4] A third case, *United States v. Mekediak*, 510 Fed. Appx. 348, 354 (6th Cir.
Jan. 3, 2013) (unpublished), cited *Tirrell* but addressed only the residual clause.
On July 7, 2016, the Sixth Circuit recognized that *Johnson II* abrogated *Mekediak*.
*See Shuti v. Lynch*, ___ F.3d ___, No. 15-3835, 2016 WL 3632539 at *6 (6th Cir.
July 7, 2016). The court applied *United States v. Pawlak*, 822 F.3d 902, 911 (6th
Cir. 2016), to the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F) and
18 U.S.C. § 16(b), and held that a non-citizen previously convicted of unarmed

26

*Tirrell* is unpersuasive. In light of the Ninth Circuit's decision in *Flores-Cordero* and the Michigan Court of Appeals' decisions in *Hicks* and *Passage*, the level of force required to support a conviction for unarmed robbery in Michigan does not meet the threshold level of force required under *Johnson I*.

### e. Conclusion: Elements Clause

Michigan law says a conviction for unarmed robbery supported by evidence of a minor scuffle or an insulting or embarrassing touch is sufficient to support a finding that a defendant took property by "force and violence" or by "assault." Federal law says evidence of a minor scuffle or an offensive touch is not sufficient to show that an offense "has as an element the use, attempted use, or threatened use of physical force against the person of another" within the meaning of the federal career offender guideline. Unarmed robbery under Michigan law is not a crime of violence under the elements clause of the career offender guideline. Attempted unarmed robbery, therefore, also is not a crime of violence under the elements clause.

### 4. Enumerated Offenses

In the § 2255 motion, Ervin argues that he is not a career offender under the enumerated offenses in either the guideline or Application Note 1. Mot. § 2255 at

robbery under Michigan law could not be deemed convicted of a "crime of violence" under the residual clause of 18 U.S.C. § 16(b).

27

38-42. The United States conceded the argument by not responding.

Because guideline commentary is as authoritative as the guideline itself, *see Stinson v. United States*, 508 U.S. 36, 47 (1993), there is no meaningful distinction between the Application Note in effect as of the date of Ervin's re-sentencing and the incorporation of much of that note into the guideline itself as of August 1, 2016. The United States has conceded that Ervin is not a career offender under the enumerated offenses in U.S.S.G. § 4B1.2 Application Note 1 (eff. Nov. 1, 2014) or U.S.S.G. § 4B1.2(a)(2) (eff. Aug. 1, 2016).

### 5. Conclusion

Ervin is not a career offender.

## V. Remedy

Ervin's current presentence report shows that his total adjusted offense level should be 4 rather than 21. With a criminal history category of VI, his advisory guideline range would be 6 to 12 months. He has served significantly more than 12 months. Rather than delaying re-sentencing for preparation of a new presentence report, the probation office will be required to do only a new guideline calculation without the career offender enhancement. Substitute counsel may appear at the sentencing hearing for the United States without further leave and, if necessary, CJA counsel will be appointed for the sake of expediting re-sentencing.

28

Accordingly, IT IS HEREBY ORDERED as follows:

1. The United States' motion to stay (Doc. 78) is DENIED.

2. Ervin's motion under 28 U.S.C. § 2255 (Doc. 72) is GRANTED.

3. The amended judgment of July 13, 2015 (Doc. 68), is VACATED.

4. A re-sentencing hearing is set for **Thursday, August 4, 2016**, at **3:30 p.m.**, in the Snowy Mountains courtroom of the James F. Battin Courthouse in Billings, Montana.

5. The clerk shall ensure that all pending motions in this case and in CV 16-56-BLG-SPW are terminated and shall close the civil file by entering judgment, by separate document, in favor of Ervin and against the United States.

DATED this 28th day of July, 2016.

Susan P. Watters
United States District Court

cc:  USM
     USPO

29